# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISCTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| GIOVANNI LOYOLA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| ) | CIVIL ACTION NO.: |
| v. ) | 2:21-CV-00594-AMM |
| ) | |
| JEFFERSON COUNTY SHERIFF'S ) | JURY DEMAND |
| DEPUTY GODBER, BADGE NO 379 ) | |
| ) | |
| DEFENDANT. ) | |

## AMENDED COMPLAINT

**I.   Jurisdiction and Venue**

1. Plaintiff brings this complaint under 42 U.S.C. Section 1983 for damages resulting from the deprivation of his civil rights as secured by the Fourth Amendment to the United States Constitution by the defendant. The Court has Jurisdiction of this action and over the parties pursuant to 28 USC Sections 1331 and 1343.

2. Venue is proper in the Northern District of Alabama because the injuries complained of occurred within this district.

**II.   Parties**

3. The Plaintiff, Giovanni Loyola, is over the age of nineteen and is a resident of Jefferson County, Alabama.

1

4. Defendant Godber is a deputy employed by the Jefferson County Sheriff's Department.

### III. Facts

5. Late in the evening of February 16, 2020, the plaintiff, Giovanni Loyola, a young Hispanic man, heard a knock at the door of his mother's house in Pinson, where he lived.

6. According to a police report from this incident, at 23:05 the Sheriff's Office allegedly received a call reporting that at lot #8, there were two males fighting outside and they were seen either unloading or loading large weapons.

7. Plaintiff was not fighting anyone, had no guns, nor did he see or hear any guns that evening.

8. The police report further states that Deputies McKinney, White, and Godber arrived on the scene and could hear loud arguing from inside the trailer at lot number eight, which supposedly was Plaintiff's mother's home.

9. The report further states that the deputies knocked on the door, which was answered by a Hispanic male, later identified as Giovanni Loyola, the plaintiff in this case.

10. Plaintiff did answer the door to find Jefferson County Sheriff's Deputies standing there.

11. Prior to answering the door, Plaintiff had been inside his mother's home watching television. There was no loud arguing or any other kind of disturbance going on inside the home.

12. When Plaintiff answered the door he asked the deputies standing there what was wrong. Deputy Godber, without answering and without asking permission to enter the home, reached inside the doorway, grabbed Plaintiff by the wrist and jerked him outside the home and down the steps.

13. Deputy Godber then slammed Plaintiff against a car, threw him to the ground and punched him in the face with his fist.

14. Deputy Godber then cuffed Plaintiff's hands together behind his back extremely tightly and placed his knee on Plaintiff's upper back with Deputy Godber's weight on the knee.

15. Plaintiff is a small man, about five feet five inches tall and weighing around 132 pounds. Deputy Godber, grinding his knee into Plaintiff's back, outweighed Plaintiff by at least fifty pounds.

16. Plaintiff's mother, Maribel Perez, came outside of her home, saw Deputy Godber on top of her son with his knee on her son's back, and pleaded with the deputy to get off Plaintiff.

17. Meanwhile, Plaintiff was telling Deputy Godber that he had not done anything wrong. Ms. Perez told her son to be quiet, and Deputy Godber interjected, stating that Plaintiff "doesn't know how to be fucking quiet."

18. According to the police report, the deputies claimed Plaintiff had been fighting with his brothers. However, Plaintiff had not been fighting with anyone.

19. With Deputy Godber still kneeling on Plaintiff's back with his weight on his knee, Plaintiff told Deputy Godber that the handcuffs were too tight, that they were hurting his wrists, and that one of his hands was growing numb.

20. Deputy Godber heard Plaintiff but ignored him. Deputy Godber refused even to consider loosening the handcuffs. He kept the handcuffs on Plaintiff with the same degree of tightness until he had transported him to the Jefferson County jail that night.

21. Plaintiff continued to complain about the unbearably tight handcuffs as Defendant transported him to the jail.

22. While Plaintiff remained cuffed on the ground with Deputy Godber's knee in his back, according to the police report Deputies McKinney and White went inside Plaintiff's mother's trailer and, in the words of the report, conducted what they claim was a "safety sweep to see if anyone had been shot or was injured from the apparent fight, which was the initial complaint."

23. However, the deputies did not have a warrant to enter the home, and there were no exigent circumstances that would allow them to enter the home without a warrant. The other occupants of the home were not inside the home, they were outside.

24. While deputies McKinney and White were conducting their search of the home without a warrant, Deputy Godber remained on top of Plaintiff with his knee in his back and the handcuffs dangerously tight on his wrists.

25. The handcuffs remained tightly on Plaintiff's wrists until they were removed hours later at the jail.

26. After Plaintiff got out of jail on February 28, 2020, his left wrist was still in tremendous pain. He went to Christ Health Center where the physician provided him with a medical excuse stating that "[h]e was found to have a severe problem with blood flow to his left hand and is in need of emergent surgery."

27. Plaintiff was admitted to St. Vincent's East and remained there until March 2, 2020.

28.  On February 28, upon admission to the Emergency Department, the notes state that Plaintiff had "gray fingertips and concern for necrosis of the left hand.  He has had increasing pain in his fingertips after he was handcuffed 4 days ago and sent in from Christ Health Center for rule out of dissection."

29. Plaintiff then went for a surgical consultation that same day, February 28. The surgeon's records state, "[t]his is a 25 year old male who complains of severe pain to his second and third left finger with dusky ischmic tips. Patient was arrested about 3 days ago and was placed on handcuffs for a few hours. After the handcuffs were removed he developed severe wrist swelling. Over the next couple of days he developed worsening pain to his distal tip of his second and third left finger."

30. Plaintiff was admitted to the hospital. The admission notes state: "Patient presented to the emergency department after being sent over from clinic with complains of left hand pain. Patient states that he was arrested 4 days ago and was placed in handcuffs that were very tight. He noted after this experience left wrist pain and left wrist swelling the progressed over the next several days to primarily left second and third digit swelling, discoloration, and intense pain that would wake him during the night."

31. The discharge report, dated March 20, 2020, states that "Pt state he was arrested and they did the handcuffs too tight and messed up his wrists and fingers."

32. Plaintiff was admitted to the hospital on February 28, 2020 and discharged on March 2, 2020. During that time the records indicate that Plaintiff reported

that when he was arrested "after wearing handcuffs his fingers turn blue and became painful."

33. Plaintiff went home but returned to the hospital on March 17, 2020, complaining of extreme pain in his fingers. Plaintiff was admitted to the hospital on March 17, 2020 and remained there until March 25, 2020. Those medical records state that "He reports he was arrested about 3 weeks ago and after wearing handcuffs his fingers turned blue and became painful."

34. Over the next ten months Plaintiff went to Saint Vincent's Hospital and then to UAB for continued treatment of his hand, but due to the injuries inflicted on him by the deputies' improper use of handcuffs, Plaintiff's left hand has had to be amputated.

35. Plaintiff used his hands to earn a living and his loss of a hand has severely impacted his ability to support himself and his family.

## IV. Causes of Action.

**FIRST CAUSE OF ACTION: 42 USC SECTION 1983: UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT**

36. As stated above, Deputy Godber, standing outside Plaintiff's house, reached inside the doorway and grabbed Plaintiff by the wrist, constituting a seizure of Plaintiff's person. Deputy Godber neither requested nor received permission to enter the house.

37. Plaintiff was within his domicile at the time of the seizure. Deputy Godber lacked a warrant to arrest Plaintiff and had no search warrant entitling him to enter the home. There were no exigent circumstances justifying Deputy Godber's actions, as Plaintiff was watching TV, there was no disturbance, and Plaintiff came willingly to the door to speak. Nevertheless, Deputy Godber made an entry into Plaintiff's home by reaching across the threshold and seizing Plaintiff by the wrist.

38. At this point, Plaintiff was arrested, as no reasonable person would have believed he was free to leave after Deputy Godber had seized him by the wrist.

39. Plaintiff was physically located inside the home when the initial seizure occurred. Plaintiff had an objectively reasonable expectation of privacy within his own home, and the right therein to be free from unreasonable government intrusion.

40. As stated above, Deputy Godber jerked Plaintiff outside the home and down the steps, slammed Plaintiff against a car, threw him to the ground and punched him in the face with his fist, then cuffed Plaintiff's hands together behind his back extremely tightly, and placed his knee on Plaintiff's back.

41. Deputy Godber lacked probable cause for the arrest, and there were no exigent circumstances or other special needs justifying the seizure.

42. Deputy Godber's acts were objectively unreasonable. As such, they violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

43. As a result of Deputy Godber's actions, Plaintiff suffered injuries including deprivation of liberty, physical injuries, and pain and suffering and emotional distress. Plaintiff is entitled to compensatory damages for these injuries.

44. Deputy Godber acted willfully or with deliberate difference in depriving Plaintiff of his Fourth Amendment rights. Deputy Godber's actions were malicious. Plaintiff is entitled to punitive damages for Deputy Godber's malicious conduct.

45. Deputy Godber's violations of Plaintiff's rights secured by the Fourth Amendment were the proximate cause and the cause in fact of the injuries he suffered.

**SECOND CAUSE OF ACTION: 42 USC SECTION 1983: EXCESSIVE FORCE LEADING TO BODILY INJURY IN VIOLATION OF THE FOURTH AMENDMENT**

46. Deputy Godber used unreasonable force in arresting Plaintiff. As stated above, Plaintiff was quietly watching TV, came willingly to the door to speak with the deputy, and there was no disturbance. Nevertheless, Deputy Godber made an entry onto the curtilage and into Plaintiff's home by reaching across the threshold and seizing Plaintiff by the wrist. Seizing Plaintiff by the wrist

constituted excessive and unreasonable force in violation of the Fourth Amendment because Plaintiff was in his home at the time and there were no exigent circumstances justifying the seizure.

47. Next, as stated above, Deputy Godber jerked Plaintiff outside the home and down the steps, slammed Plaintiff against a car, threw him to the ground and punched him in the face with his fist, then cuffed Plaintiff's hands together behind his back extremely tightly, and placed his knee on Plaintiff's back. These actions constituted unreasonable and excessive force as Plaintiff was not resisting and did not present any danger to the safety of Deputy Godber or others.

48. Next, as stated above, Deputy Godber handcuffed Plaintiff's wrists so tightly that Plaintiff immediately lost sensation in one hand, and Deputy Godber refused to loosen the handcuffs even after Plaintiff told him that they were too tight and were causing him pain. These actions and inactions constituted unreasonable and excessive force. The excessive force as a result of the handcuffs continued until the handcuffs were removed at the jail, as Plaintiff was not resisting at any time, the handcuffs did not need to be that tight to restrain Plaintiff, and Deputy Godber knew that the handcuffs were too tight but refused to loosen them.

49. The force used by Detective Godber as described above was objectively unreasonable and excessive under the circumstances as described in this Complaint. As such, Detective Godber's use of excessive force violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

50. As a result of Deputy Godber's actions, Plaintiff suffered injuries including deprivation of liberty, physical injuries including the loss of his hand, pain and suffering and emotional distress, and lost future earning potential. Plaintiff is entitled to compensatory damages for these injuries.

51. Deputy Godber acted willfully or with deliberate difference in depriving Plaintiff of his rights secured by the Fourth Amendment. Deputy Godber's actions were malicious. Plaintiff is entitled to punitive damages for Deputy Godber's malicious conduct.

52. Deputy Godber's violations of Plaintiff's rights secured by the Fourth Amendment were the proximate cause and the cause in fact of the injuries Plaintiff suffered, as evidenced by the medical treatment Plaintiff subsequently received.

## V.     Damages

53. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

54. Plaintiff has extreme emotional distress, severe emotional and physical pain and anguish, embarrassment, humiliation, shame, damage to reputation, damage to his personal and family relationships, loss of income, legal fees, medical expenses, lost earning potential, and other pecuniary losses as a consequence of Defendant's unlawful conduct.

55. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment, injunctive relief, compensatory, and punitive damages is his only means of securing adequate relief.

## VI.   Request for Relief.

WHEREFORE, Plaintiff seeks the following relief:

1. Award a judgment in favor of Plaintiff against Defendant in an amount in excess of the jurisdictional limits of this court for compensatory damages, including damages for severe emotional and physical pain and anguish, embarrassment, humiliation, shame, damage to reputation, damage to his personal and family relationships, loss of income, legal fees, medical expenses, lost earning potential, and other pecuniary losses as a consequence of Defendant's unlawful conduct.

2. Award punitive damages against the Defendant sufficient to punish him and to deter further wrongdoing;

3. Grant injunctive relief sufficient to protect Plaintiff from the ongoing harassment and intimidation of Defendant;

4. Award Plaintiff a reasonable attorney fees pursuant to 42 U.S.C. 1988, including a reasonable attorney's fee for work preliminary to and necessary to the institution of this action;

5. Award Plaintiff all litigation expenses, cost, prejudgment and post judgment interest as provided by law; and,

6. Such other and further relief as the Court deems just and proper.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

DATED: April 28, 2021.

Respectfully submitted,

*/s/ Jon C. Goldfarb*
Jon C. Goldfarb asb-5401-f58j
L. William Smith asb 8660-a61s
Christina M. Malmat asb 1214 y44q
Lieselotte Carmen Burks asb 8304 t46e
Counsel for Plaintiff

**OF COUNSEL**:
Wiggins, Childs, Pantazis, Fisher,
& Goldfarb, LLC
301 19th Street North
Birmingham, AL 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

14